UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**WESTCHESTER FIRE INSURANCE COMPANY**, a foreign corporation,

    **Plaintiff,**

vs.                             CIVIL ACTION NO. 3:03 CV 188/MCR

**PUNIT CORPORATION**, a Florida corporation; and **FIRST NATIONAL BANK NORTHWEST FLORIDA**,

    **Defendants.**

### WESTCHESTER'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT/COUNTERCLAIMANT, PUNIT CORPORATION

COMES NOW the Plaintiff, WESTCHESTER FIRE INSURANCE COMPANY (hereinafter sometimes referred to as "Westchester"), by and through undersigned counsel and pursuant to Rule 56 of Fed.R.Civ.P. and Local Rules 56.1 and 7.1, and moves this honorable Court for an order granting summary judgment against the Defendant/Counterclaimant, PUNIT CORPORATION (hereinafter sometimes referred to as "Punit"), on its counterclaims[1].

Summary judgment is proper in this matter because there is no genuine issue of material fact and Westchester is entitled to judgment as a matter of law. Each and all of Punit's counterclaims are contract claims related to the project contract documents. Specifically, Punit's only claims against Westchester are for breach of the Performance

---

[1] Westchester and the Defendant/Counterclaimant, First National Bank Northwest Florida (hereinafter sometimes referred to as the "Bank"), have reached a settlement agreement resolving all issues in this matter between Westchester and the Bank and are preparing for filing with the Court a motion for dismissal with respect to their claims and/or counterclaims.

Bond and breach of the Project Completion Agreement. As the pleadings, affidavits and evidence in the record show, Punit has no rights under the Performance Bond or the Project Completion Agreement and has either assigned any rights previously held to the Bank or has been divested of those rights as a matter of law through foreclosure. Having retained no rights in the contract documents, Punit cannot state a cause of action and/or lacks standing to maintain this action.

This motion is based on the attached Memorandum of Law in Support of Motion for Summary Judgment, the attached Affidavit and/or summary judgment evidence, and all pleadings and papers on file. Reference to the Appendix attached hereto shall be identified as "App." followed by a tab number and other identifying characteristics. References to the record in this matter shall be identified as "Rec." followed by additional identifying characteristics. Reference to Westchester's Statement of Undisputed Facts shall be "Rec. SUF" followed by the paragraph number.

## STATEMENT OF THE CASE

On or about July 10, 2001, River Valley Development, Inc. and Punit entered into a contract for the construction of a motel to be located at 2390 West Detroit Boulevard, Pensacola, Florida (Rec. First Amended Complaint, paragraph 6; Answer to First Amended Complaint, paragraph 6). Funding for the Project was provided by the Bank and, in conjunction with the Bank's commitment to fund the Project, Punit was required to enter into and did enter into a Construction Loan Agreement and, concurrently, to secure the loans from the Bank, a Security Agreement and the Collateral Assignment (App. Tab 1, Affidavit of Michael A. Peters, paragraphs 5, 7 and 8).

2

A dispute arose between the parties regarding the construction of the Project and ultimately Westchester filed suit (the instant action) to which Punit and the Bank responded and counterclaimed. During the pendency of the suit, the parties negotiated and entered into a Project Completion Agreement for completion of the construction of the Project. Sometime later, a dispute again arose regarding the construction of the Project and resulted in Westchester filing the First Amended Complaint and Punit and the Bank responding by filing their Answers and Counterclaims to the First Amended Complaint (Rec. First Amended Complaint; Answers to First Amended Complaint). Punit, in its First Amended Counterclaim, brought claims under two, and only two, counts. Count I of Punit's First Amended Counterclaim was for breach of the Performance Bond and Count II was for breach of the Agreement (the Project Completion Agreement) (Rec. Punit's First Amended Counterclaim, Count I and Count II).

On or about October 20, 2003, the Bank moved to foreclose on the property, the Security Agreements, and the Collateral Assignment (App. Tab 1, Affidavit of Michael A. Peters, paragraph 16). On or about June 20, 2005, the Bank was granted a Final Judgment of Foreclosure and was issued thereafter an Amended Certificate of Title giving possession of the Property to the Bank, including the personal property pledged by Punit to the Bank in the Security Agreement and the Collateral Assignment (App. Tab 1, Affidavit of Michael A. Peters, paragraphs 17 - 19).

Subsequent to the foreclosure, the Bank and Westchester negotiated and entered into a settlement agreement (App. Tab 1, Affidavit of Michael A. Peters, paragraph 24). Under the terms of that agreement, the Bank, in exchange for

3

consideration from Westchester, transferred and assigned to Westchester all rights, title and interest in any claims or causes of action held by the Bank as independent co-obligee under the bond or as a party under the Project Completion Agreement, as well as all rights of Punit owned by the Bank as a result of the foreclosure. Importantly, the rights transferred and assigned to Westchester under the settlement agreement included all of Punit's rights under the bond, the contract documents, including the Project Completion Agreement, and included the right to waive or release the performance of any obligation or condition of the contract documents (App. Tab 1, Affidavit of Michael A. Peters, paragraph 27, Exhibit "G," paragraph 4(b)).

## ARGUMENT

As set forth in more detail in Westchester's arguments below, there are several undisputed and important factors that must be considered with respect to Westchester's Motion for Summary Judgment. First, Punit has brought in its First Amended Counterclaim two and only two claims. Count I of the First Amended Counterclaim is a claim for breach of the Performance Bond and Count II of the First Amended Counterclaim is a claim for breach of the Project Completion Agreement. Second, the Performance Bond and the Project Completion Agreement are a part of the contract documents. Third, Punit voluntarily pledged all of its rights in the contract documents as security for the loan from the Bank. The rights pledged expressly included any rights in the Performance Bond and construction contracts and agreements (which include the Project Completion Agreement). The rights pledged further expressly included causes of actions and proceeds from the bond or construction agreements. Fourth, the Bank not only foreclosed on the real property but on the pledged personal property as well,

4

which, as shown in the Amended Certificate of Title, expressly included the contract documents, the causes of actions related to those documents, and the proceeds thereto.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

When faced with a "properly supported motion for summary judgment, [the non moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997)." The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991); *see also* Fed.R.Civ.P. 56(e) (providing that nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the non moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Moreover, "at the summary

judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.,* 243 F.Supp.2d 1257, 1262 (D.Kan. 2003) (*citing Anderson,* 477 U.S. at 250-51)." In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Gilbert v. Walt Disney Parks and Resorts, LLC,* 2005 WL 1863367, *6 (M.D. Fla.) (M.D. Fla. 2005) (*internal quotations and citation omitted*); *see also LaRoche v. Denny's Inc.,* 62 F.Supp.2d, 1366, 1371 (S.D. Fla. 1999).

## STANDING

Punit retains no rights in the contract documents, including the Performance Bond and the Project Completion Agreement, and therefore has no basis or standing to maintain any action for breach of the Performance Bond or breach of the Project Completion Agreement as alleged in its First Amended Counterclaim.  See Generally, *Kumar Corp. v. Nopal Lines, LTD.,* 462 So.2d 1178, 1183-85 (Fla. 3rd DCA 1985); discussing the concept of "standing" and "real party in interest" and noting that "[s]tanding encompasses not only this "sufficient stake" definition, but the at least equally-important requirement that the claim be brought by or on behalf of one who is recognized in the law as a "real party in interest," that is, "the person in whom rest, by

substantive law, the claim sought to be enforced,".[2]  Here, as shown below, Punit has been divested of its rights to any claims.  The U.S. Supreme Court, addressing this issue, has held "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed.R.Civ.P. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992), *citations omitted.*  Punit's general allegations in its counterclaims assume Punit's claims are based on any rights of Punit under the Performance Bond or Project Completion Agreement.  Punit's general allegations fail here (as a response to a summary judgment motion), however, because Punit pledged and/or assigned as security, and subsequently lost through foreclosure, the very rights upon which its general allegations are based.

Punit, through its own voluntary acts, and to induce the Bank to fund the Project, pledged and/or assigned each and all of its rights to the Bank as security for the loan to construct the Project.[3]  (Rec. SUF, paragraphs 6 – 11).  The rights pledged included, among other things, the rights of Punit under the Security Agreement and the Collateral Assignment (App. Tab 1, Affidavit of Michael A. Peters, Exhibits "F" and "G").

---

[2] Rule 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a).
[3] The foreclosure of the assigned rights is discussed separately below.

With respect to standing, it is important to recognize that a claim cannot be sustained after such claim is assigned.[4] In this case Punit not only assigned all of its rights to the Bank, including the right to any cause of action and proceeds, but those same rights were foreclosed by the Bank. "In construing assignments, the court must determine (1) exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest, and (2) that a valid assignment has been made." *University Creek Associates, II, Ltd. v. Boston American Financial Group, Inc.,* 100 F.Supp.2d 1337, 1339 (S.D. Fla. 1998) *citations omitted.* Because, in this case, there is no dispute as to the validity of the pledge or assignment (see Punit's answer to the foreclosure complaint) (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "H," paragraph 12, and Exhibit "I," paragraph 12) and because the pledge and/or assignment are clear as to the property pledged or assigned, Punit cannot claim to be the real party in interest, as its substantive rights in the property and/or rights are now held by the assignee (the Bank and, through subsequent assignment, Westchester). "In general, 'contracts are assignable unless forbidden by the terms of the contract, or unless the assignment would violate some rules of public policy or statute, or unless the terms of the contract are such as to show reliance on the personal credit of the purchaser'." *Id.* Moreover, it is well settled that "[a]n assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which assignor's right to performance by obligor is

---

[4] *See generally, Marulanda v. Marrero,* 162 B.R. 20, 25 (S.D. Fla. 1993) wherein plaintiffs lacked standing as they had earlier assigned claim to third party and such claims were not reassigned back to plaintiffs until after statute of limitations had run. *Harmony Homes, Inc. v. U.S. on Behalf of Small Business Admin.,* 936 F.Supp. 907 (M.D. Fla. 1996) plaintiff did not hold valid interest in mortgage, and thus lacked standing due to its assignment to bank of its interests in mortgages and promissory notes.

extinguished in whole or in part and the assignee acquires a right to such performance." *Restatement (Second) of Contracts,* § 317 (1981). Under Florida law a party may assign almost any cause of action, with the noted exception of claims for personal injury. *Ginsberg v. Lennar Florida Holdings, Inc.,* 645 So.2d 490, 496 (Fla. 3rd DCA 1994). This right to assign causes of action includes causes of action arising under a contract. *See Dept. of Revenue v. Bank of America,* 752 So.2d 637, 642 (Fla. 1st DCA 2000) ("Under Florida law, parties can assign causes of action derived from a contract . . .") (additional citations omitted). The First DCA in *Bank of America* goes on to state the general rule is that "[a]n assignee stands in the shoes of his assignor" and explains that an "assignment transfers to the assignee all the interest and rights of the assignor in and to the thing assigned." *Id.* In *Spears v. West Coast Builders' Supply Co.,* 133 So. 97 (Fla. 1931), where the cause of action arose out of a contract, the Florida Supreme Court has explained, "It has also been held in this state that choses in action arising out of a contract are assignable and may be sued upon and recovered by the assignee in his own name and right." *Id.* Additionally, it is clear under Florida law that a party can assign away its rights to a cause of action that has not yet accrued. In *W. S. Badcock v. Webb,* 699 So.2d 859 (5th DCA 1997), where the parties (assignors), concurrent with the sale of their business, assigned their interest in contracts already held by the business to the buyers and then later attempted to file suit on the contracts assigned, the court, in remanding with directions to dismiss the breach of contract actions and discussing the law of assignments generally, stated, "We conclude that, by assigning 'all of Seller's interest as they may appear in that certain dealer contract entered into between Seller and the W. S. Badcock Corporation,' Webb and Keene have assigned

9

away their right to file a cause of action for breach of contract . . . . In so doing, they have terminated their standing to pursue this matter." Id. at 861. As explained above, at the time of the making of the assignment, the cause of action in Badcock was not in existence.

Clearly, under the plain language of the assignments and agreements, at the time of execution, Punit pledged and assigned away its interest in present and future causes of action.

The law on this issue is settled and clear. Punit had the right to assign all of its rights to the Bank including choses in action and causes of action. Punit voluntarily and expressly exercised that right and pledged and assigned to the Bank all choses in action and causes of action "whether now existing or hereafter acquired." (App. Tab 1, Affidavit of Michael A. Peters, Exhibits "F" and "G"). Following such assignment, the Bank gained a right to performance of the assigned rights and any of Punit claims, as assignor, are extinguished.

As a practical matter, as well as from a public policy standpoint, the rights upon which Punit bases its claims are almost universally assigned in every project or transaction of this type. Simply put, the assignee, the Bank, must be allowed to claim and exercise the assigned rights. Otherwise, the assignments would be meaningless and would serve no purpose as security sufficient to induce banks to provide construction loans.

Succinctly stated, Punit cannot allege "specific facts" establishing standing. Moreover, by virtue of Punit's assignment and foreclosure Punit has no

interest at stake which will be affected by the outcome of the litigation. Punit's rights, interests, and claims have been extinguished as a matter of law.

## SECURITY AGREEMENT

It is undisputed that Punit executed the Security Agreement in favor of the Bank (Rec. SUF, paragraph 10). It is also undisputed that Punit, through the execution of the Security Agreement and pursuant to the express language contained in the Agreement, pledged to the Bank all accounts and other rights to payments, all contract rights, general intangibles, choses in action, causes of action and other intangible personal property of the debtor (Punit) of every kind and nature whatsoever, whether existing or acquired after the execution of the Security Agreement, which pertain to or arise from or in connection with, or are related to the Property or the personal property (App. Tab 1, Affidavit of Michael A. Peters, paragraph 12, Exhibit "F"). The rights pledged specifically included, "all construction contracts and agreements, <u>now or hereafter existing</u>, relating in any way to the construction of the improvements . . . ," and further included all bonds and sureties relating in any way to the design or construction of the improvements (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "F"). It is clear by the express language contained in the Security Agreement that the bank obtained through the Security Agreement a security interest in the construction contracts and agreements, in the bonds, and in any causes of action arising out of or related to those contracts or bonds. As noted, Punit has brought two claims in this matter – one for breach of the Performance Bond and one for breach of the Contract Completion Agreement. The Project Completion Agreement is clearly a construction contract or agreement related to

the construction of the improvements. Likewise, the bond, by its express terms, is directly related to the construction of the improvements.

### ASSIGNMENT OF MORTGAGOR'S INTEREST IN CONTRACT DOCUMENTS

Like the Security Agreement, the Assignment of Mortgagor's Interest in Contract Documents ("Collateral Assignment") (App. Tab 1, Affidavit of Michael A. Peters, paragraph 13, Exhibit "G") was executed by Punit in favor of the Bank as additional security to the Bank for the loan made to Punit. The "contract documents" specifically include those documents described in Exhibit "B" to the Collateral Assignment and expressly include "all construction contracts and agreements, now or hereafter existing, relating in any way to the construction of the improvements," as well as "all payment and/or performance bonds now existing or hereafter entered into by Mortgagor with respect to the construction of the improvements." Under the Collateral Assignment, by its express terms, Punit unconditionally transferred and assigned to the Bank (and its successors and assigns) all of the right, title and interest of Punit in and to the contract documents, and granted to the Bank (and its successors and assigns) a security interest in the contract documents and all rights and privileges of any nature accruing thereunder. Paragraph 4(b) of the Collateral Assignment expressly states that, "The rights assigned hereunder include all of Mortgagor's right and title to modify the contract documents, to terminate the contract documents, and to waive or release the performance or observance of any obligation or condition of the contract documents. Paragraph 2 of the Collateral Assignment, entitled "Termination of Assignment," makes clear that the Assignment, while absolute on its face, terminates only upon the payment in full of all indebtedness secured by the Assignment as evidenced by the recording of a

satisfaction or full release of the Mortgages and Security Agreement, in this case, a condition that never occurred, thus no termination. Under the terms of the Collateral Assignment, since Punit defaulted in its obligations to make payment in full of all indebtedness secured by the Assignment and was ultimately foreclosed upon by the Bank, the Assignment never terminated and remained in full force and was foreclosed upon.

It is clear that the assignment was security for the indebtedness. While in some circumstances a plaintiff may retain a beneficial interest following an assignment because the property or rights will be returned or retained upon payment of the debt, that is not the case here, as Punit failed to pay the debt and was divested of its interest through foreclosure. *See MHI Shipbuilding, LLC v. National Fire Ins. Co. of Hartford*, 286 B.R. 16, 31 (D.Mass. 2002). In *MHI*, the assignment was found to be merely a collateral assignment, not absolute, because it did not act as a total transfer of MHI's rights. *Id.* at 29. The MHI Court addressed the question of whether an assignor of collateral rights retains enough of an interest in those rights to have standing to sue on them. *Id.* at 30. The Court determined that an assignor for security or collateral purposes has standing to sue. *Id.* In *MHI*, however, with respect to the assignee's rights, the Court noted that because the assignee <u>never took action to foreclose</u> on MHI's rights under the bond (which were assigned), the assignee retained only a security interest in the assignor's rights. *Id* at 29 (emphasis added). That is clearly not the case with respect to Punit's assignment to the Bank. Punit's assignment, broad and all-encompassing by its express terms, <u>was foreclosed upon</u>. As the *MHI* Court explained, "as long as the assignee <u>has not foreclosed</u> on the collateral, the assignor

has an interest because she will regain full title to the assigned collateral in the future (without being subject to the assignee's security interest), as long as she pays off her debt." (emphasis added) *Id.* at 31.  Applying the *MHI* analysis to this case, the Bank's foreclosure of the collateral alone would have been sufficient to cut off or extinguish Punit's rights under the contract documents pledged as security.  Here, however, it is undisputed that the assignee, the Bank, not only foreclosed on the collateral but foreclosed independently on the security agreement and collateral assignment, thereby extinguishing forever Punit's rights thereunder.  The Final Judgment of Foreclosure and issuance of the Amended Certificate of Title divested Punit of any and all beneficial interest it may have ever had.

## THE FORECLOSURE

The foreclosure complaint filed by the Bank against Punit (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "H") alleged in paragraphs 11 and 12 that Punit executed the Security Agreement and the Collateral Assignment and specifically alleged that the Security Agreement and the Collateral Assignment pledged certain personal property as security.  Additionally, paragraphs 11 and 12 attached and incorporated by reference the Security Agreement and the Collateral Assignment.  In Punit's answer to the foreclosure complaint (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "I"), Punit admitted the allegations of paragraphs 11 and 12 in their entirety, thereby recognizing as a matter of law that Punit had pledged all of its rights in the Security Agreement and the Collateral Assignment or any of the interest therein.[5]  The Final Judgment of

---

[5] To the extent that Punit may now attempt to claim any retained interest in the contract documents, including the right to any proceeds from any litigation concerning those

Foreclosure (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "J") again specifically describes in detail, through Exhibits "B" and "C" attached to the Final Judgment of Foreclosure, the property being foreclosed upon and specifically includes the property contemplated by the Security Agreements including, specifically, the construction contracts and agreements (of which the Project Completion Agreement is a part), all payment and/or performance bonds, all causes of action and other intangible property of the debtor, and further included specifically, in paragraph 16 of Exhibit "B" to the Final Judgment of Foreclosure, "all proceeds, products and replacements of and accessions to any of the foregoing." Punit did not appeal the judgment and the judgment is, therefore, final as a matter of law. The Amended Certificate of Title (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "K") confirms that the Bank has title to that property contained in Exhibits "A," "B" and "C" attached to the Amended Certificate of Title. Exhibits "B" and "C" to the Amended Certificate of Title are identical to Exhibits "B" and "C" attached to and made a part of the Final Judgment of Foreclosure as discussed above and expressly and specifically include each and all of those contracts and rights in those contracts, including specifically the right to any proceeds from any of those contracts. Punit cannot dispute the broad scope of the property and rights voluntarily pledged or the foreclosure of the property and rights pledged. It follows,

---

contract documents, such claim should have been raised concurrent with Punit's answer to the foreclosure complaint and, having not been raised, is thereby barred as *res judicata*. *See Topps v. State of Florida,* 865 So.2d. 1253, 1255 (Fla. 2004) ("The doctrine of *res judicata* bars relitigation in a subsequent cause of action not only of claims raised, but also claims that could have been raised (citation omitted) . . . . The idea underlying *res judicata* is that if a matter has already been decided, the petitioner has already had his or her day in court, and for the purposes of judicial economy, that matter generally will not be reexamined again *in any* court (except, of course, for appeals by right). (emphasis in original).

then, that Punit's claims to any retained rights must fail, as Punit cannot support its claims in law or in fact.

## ASSIGNMENT TO WESTCHESTER

Pursuant to the settlement agreement, the Bank transferred and assigned any and all rights gained by the Bank from Punit (as described above) to Westchester. Further, the Bank transferred and assigned any and all independent rights held by the Bank as dual obligee under the Performance Bond or as a party to the Project Completion Agreement. Pursuant to the Settlement Agreement, the rights assigned to Westchester include, without limitation, "any and all of the Bank's rights, claims, demands, actions and causes of action against Westchester, expressly including without limitation any and all rights, claims, demands, actions or causes of action held by the Bank as obligee under the Performance Bond and/or as a party to the Project Completion Agreement, the contract documents (as defined in the loan documents) or the loan documents. The rights, claims, demands, actions or causes of action surrendered, transferred and assigned further specifically include any and all rights, claims, demands, actions or causes of action previously held by Punit Corporation under the Performance Bond, the Project Completion Agreement, the contract documents, and/or the loan documents and obtained by the Bank from Punit Corporation as a result of the Bank's foreclosure against Punit Corporation as more particularly set forth in the Final Judgment of Foreclosure and the Amended Certificate of Title." (App. Tab 1, Affidavit of Michael A. Peters, paragraph 25-27). In accord with

the law of assignments discussed above, Westchester now holds and owns any and all rights previously held by Punit under the Performance Bond or Project Completion Agreement.

## **CONCLUSION**

It is clear through the pleadings, affidavits, and evidence in the record, as set forth herein, that Westchester is entitled to Summary Judgment as to each and all of Punit's counterclaims in its First Amended Counterclaim.

Punit raises two claims against Westchester, (1) breach of the Performance Bond, and (2) breach of the Project Completion Agreement. Both the Performance Bond and the Project Completion Agreement were part of the "contract documents" as defined in the loan documents. It cannot be disputed that all of Punit's rights, title, and interest in these documents were pledged as security in order to obtain loans from the Bank.

The Security Agreement and Collateral Assignment (discussed above) clearly outline and define Punit's rights. Moreover, those rights are unequivocally encumbered by the agreements. Punit, as a party to those documents, is charged with knowledge of the content and terms of the documents.

Through foreclosure, the rights pledged by Punit were absolutely and unequivocally transferred to the Bank. The Amended Certificate of Title is clear and specific as to Punit's rights gained by the Bank. Any rights Punit may have ever had in the Contract Documents were extinguished by foreclosure and assignment. This includes, specifically, any rights in the Performance Bond and Project Completion Agreement. Because Punit was divested of those rights, Punit has no standing and

therefore cannot maintain any cause of action on the Performance Bond and Project Completion Agreement. Based on the foregoing, it is clear that no genuine issues of material fact exist. Therefore, summary judgment is appropriate and Punit's argument to the contrary must fail.

WHEREFORE, Westchester respectfully requests this Court grant this Motion for Summary Judgment as to each and all of Punit's counterclaims.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Westchester requests oral argument. Westchester estimates that 30 minutes per side should be adequate.

Respectfully submitted,

_____
H. Wesley Reeder
Florida Bar No. 0195571
Robert A. Emmanuel
Florida Bar No. 283797
EMMANUEL, SHEPPARD & CONDON
30 S. Spring Street
Pensacola, FL  32502
(850) 433-6581
Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the U. S. District Court this 17th day of January, 2006, by using the CM/ECF system,

which will send notice of electronic filing to Yancey F. Langston, Esquire, of Moore, Hill & Westmoreland; to Greg Smith, Esquire; and to Bill Hutto, Esquire, of Hutto & Bodiford.

_____
H. Wesley Reeder