UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**WESTCHESTER FIRE INSURANCE COMPANY**, a foreign corporation,

   Plaintiff,

vs.                                    CIVIL ACTION NO. 3:03 CV 188/MCR

**PUNIT CORPORATION**, a Florida corporation; and **FIRST NATIONAL BANK NORTHWEST FLORIDA**,

   Defendants.

## WESTCHESTER'S STATEMENT OF UNDISPUTED FACTS

COMES NOW, WESTCHESTER FIRE INSURANCE COMPANY, by and through its undersigned counsel, as required by Local Rule 56.1, and files its Statement of Undisputed Facts. Westchester contends there are no genuine issues as to any of the following material facts:

1. At all times material hereto, Punit is and has been a corporation incorporated under the laws of the state of Florida and having its principal place of business in the state of Florida (Rec. First Amended Complaint, paragraph 2; Answer to First Amended Complaint, paragraph 2).

2. At all times material hereto, Westchester is and has been a corporation incorporated under the laws of the state of New York and having its

principal place of business in the state of Georgia (Rec. Punit's First Amended Counterclaim, paragraph 3; Plaintiff's Reply to Punit's First Amended Counterclaim, paragraph 3).

3. On or about July 10, 2001, Punit entered into a contract with River Valley Development, Inc. as general contractor of a Best Western Motel to be located at 2390 Detroit Boulevard, Pensacola, FL (hereinafter called the "Project") (Rec. First Amended Complaint, paragraph 6; Punit's Answer to First Amended Complaint, paragraph 6).

4. Westchester, as surety, issued a performance bond regarding the Project, which Performance Bond named Punit and the Bank as co-obligees under the bond (Rec. First Amended Complaint, paragraph 7; Punit's Answer to First Amended Complaint, paragraph 7).

5. In January of 2004, Westchester, Punit and the Bank negotiated and entered into a Project Completion Agreement (hereinafter referred to as the "Agreement.") to complete construction of the Project (Rec. First Amended Complaint, paragraph 21; Punit's Answer to First Amended Complaint, paragraph 21).

6. To induce the Bank to loan construction funds for the Project and to provide other financial accommodations to Punit for the construction of the Motel and to provide security for the loan, the Bank required Punit to execute certain documents in favor of the Bank. These documents included, among other things, a construction loan agreement, mortgages, promissory notes, security

agreements, collateral assignments and guarantees (App. Tab 1, Affidavit of Michael A. Peters, paragraph 7).

7.  On or about September 5, 2001, the Bank entered into a Construction Loan Agreement with Punit (as borrower) and with River Valley Development Corporation (as contractor) (App. Tab 1, Affidavit of Michael A. Peters, paragraph 9, and Exhibit "A" thereto).

8.  On September 7, 2001, Punit executed and delivered a Promissory Note and a Mortgage securing payment of the Note to the Bank (App. Tab 1, Affidavit of Michael A. Peters, paragraph 10, and Exhibits "B" and "C" thereto).

9.  On September 7, 2001, Punit executed and delivered a second Promissory Note and a Mortgage securing payment of the Note to the Bank (App. Tab 1, Affidavit of Michael A. Peters, paragraph 11, and Exhibits "D" and "E" thereto).

10.  On September 7, 2001, Punit executed in favor of the Bank a Security Agreement pledging certain personal property to the Bank (App. Tab 1, Affidavit of Michael A. Peters, paragraph 12, and Exhibit "F" thereto).

11.  On September 7, 2001, Punit executed in favor of the Bank an Assignment of Mortgagor's Interest in Contract Documents (hereinafter referred to as the "Collateral Assignment") (App. Tab 1, Affidavit of Michael A. Peters, paragraph 13, and Exhibit "G" thereto).

12.  The total amount made available to Punit through loans and other financial accommodations from the Bank was Two Million, Two Hundred Sixty-

Nine Thousand, Five Hundred and 00/100 Dollars ($2,269,500.00) (App. Tab 1, Affidavit of Michael A. Peters, paragraph 6).

13. Punit, by and through its president, Maganbhai Patel, agreed to and did execute the required documents set forth above (App. Tab 1, Affidavit of Michael A. Peters, paragraph 8).

14. On or about October 20, 2003, the Bank brought an action to foreclose on the mortgages, the security agreement and the Collateral Assignment in the Circuit Court in and for Escambia County, Florida in case number 2003-CA-002139. (App. Tab 1, Affidavit of Michael A. Peters, paragraph 16, and Exhibit "H" thereto).

15. On or about November 12, 2003, Punit filed its answer to the foreclosure complaint (App. Tab 1, Affidavit of Michael A. Peters, paragraph 16, and Exhibit "I" thereto).

16. On June 20, 2005, the Circuit Court issued an Order and Final Judgment of Foreclosure in favor of the Bank (App. Tab 1, Affidavit of Michael A. Peters, paragraph 17, and Exhibit "J" thereto).[1]

17. On July 21, 2005, the Bank purchased the property described in the Final Judgment of Foreclosure (App. Tab 1, Affidavit of Michael A. Peters, paragraph 18).

18. On December 19, 2005, the Clerk of the Court issued an Amended Certificate of Title confirming the property was sold to the Bank and that the Bank has title to the property as described in the exhibits to the Amended Certificate of

---

[1] Punit did not appeal the judgment and, therefore, the judgment is final as a matter of law.

4

Title (App. Tab 1, Affidavit of Michael A. Peters, paragraph 19, and Exhibit "K" thereto).

19. On or about December 13, 2005, the Bank entered into a settlement agreement with Westchester Fire Insurance Company (App. Tab 1, Affidavit of Michael A. Peters, paragraph 24).

20. Pursuant to the settlement agreement, the Bank transferred and assigned any and all rights gained by the Bank from Punit to Westchester, excepting, however, any tangible personal property or real property (App. Tab 1, Affidavit of Michael A. Peters, paragraph 25).

21. Pursuant to the Settlement Agreement, the Bank transferred and assigned to Westchester any and all independent rights held by the Bank as dual obligee under the Performance Bond or as a party to the Project Completion Agreement (App. Tab 1, Affidavit of Michael A. Peters, paragraph 26).

22. The property described in the Amended Certificate of Title expressly includes, but is not limited to, "All construction contracts and agreements, now or hereafter existing, relating in any way to the construction of the improvements, . . . ." as well as, "All payment and/or performance bonds now existing or hereafter entered into by Mortgagor with respect to the construction of the improvements." (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "B" of Exhibit "K").

23. The property described in the Amended Certificate of Title expressly includes, but is not limited to, "[G]eneral intangibles, choses in action, causes of action and other intangible personal property of the Debtor of every

kind and nature whatsoever whether now existing or hereafter acquired, which pertain to, arise from or in connection with, or are related to the Property, the Improvements, the Fixtures, the Personal Property. . . . ", as well as, "All . . . bonds and sureties . . . now or hereafter existing, relating in any way to the design or construction of the improvements." (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "C" of Exhibit "K").

24. The property described in the Amended Certificate of Title also expressly includes, (in paragraph 16), "All proceeds, products and replacements of and accessions to any of the foregoing." (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "C" of Exhibit "K").

25. The "Contract Documents," as that term is defined in the loan documents, includes, but is not limited to, "all payment and/or performance bonds," and "all construction contracts and agreements, now or hereafter existing, relating in any way to the construction of the improvements." (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "B" (paragraphs 1 and 9) of Exhibit "G."

26.  The Project Completion Agreement is a construction contract or agreement relating to the construction of the improvements (Rec. Punit's First Amended Counterclaim, paragraph 35 (referencing to the agreement for more specific description of the provisions; Westchester's Reply to Punit's First Amended Counterclaim, paragraph 35).

27.  The Project Completion Agreement contains, in relevant part, the following language:

Recitals, paragraph 13 – "The parties have agreed to certain terms and conditions relating to the completion of the construction of the Project." (emphasis added).

Agreements, paragraph 4 – "Surety shall perform or cause to be performed all of the work required by the contract . . . ." (Rec. First Amended Complaint, Exhibit "B").

28.     Punit admits, in its answer to the foreclosure complaint, executing in favor of the Bank the security agreement pledging certain personal property to the Bank (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "H," paragraph 11, and Exhibit "I," paragraph 11).

29.     Punit admits, in its answer to the foreclosure complaint, executing in favor of the Bank the Collateral Assignment, thereby assigning to the Bank Punit's interest in certain contract documents (as described in the Collateral Assignment) (App. Tab 1, Affidavit of Michael A. Peters, Exhibit "H," paragraph 12, and Exhibit "I," paragraph 12).

                                        Respectfully submitted,

                                        _____
                                        H. Wesley Reeder
                                        Florida Bar No. 0195571
                                        Robert A. Emmanuel
                                        Florida Bar No. 283797
                                        EMMANUEL, SHEPPARD & CONDON
                                        30 S. Spring Street
                                        Pensacola, FL  32502
                                        (850) 433-6581
                                        Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the U. S. District Court this 17th day of January, 2006, by using the CM/ECF system, which will send notice of electronic filing to Yancey F. Langston, Esquire, of Moore, Hill & Westmoreland; to Greg Smith, Esquire; and to Bill Hutto, Esquire, of Hutto & Bodiford.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
H. Wesley Reeder